1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VERNON WAYNE McNEAL,

11              Plaintiff,                    No. 2:05-cv-00441 GEB EFB P

12        vs.

13   EVERT, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Currently pending before the court is a motion for summary judgment brought

18   by seven of the nine remaining defendants: defendants Ervin, Hooven, Ginder, Chatham, Barton,

19   McCoy, and Chenoweth.  Dckt. No. 141.  Defendants Leckie and Van Leer do not seek summary

20   judgment.  Dckt. No. 141-1 at 6 n.1.[1]  For the reasons that follow, the undersigned recommends

21   that summary judgment be granted as to defendants Ginder, McCoy, Hooven, Chenoweth, and

22   Barton and denied as to defendants Ervin and Chatham.[2]

23   _____

24        [1] Page numbers cited herein refer to those assigned by the court's electronic docketing
     system and not those assigned by the parties.

25        [2] The undersigned previously issued these findings and recommendations on June 29,
26   2012, but vacated them after the U.S. Court of Appeals for the Ninth Circuit issued its decision
     in *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012) (holding that notice of a plaintiff's

                                          1

I.      **Background**

This action proceeds on the May 9, 2005 amended complaint in which plaintiff alleges that defendant correctional officers Ervin, Hooven, Ginder, Chatham, McCoy, and Chenoweth used excessive force against him and defendant medical assistant Barton was deliberately indifferent to his serious medical needs by failing to appropriately respond to the injuries he sustained from the excessive force.  Dckt. No. 9, Am. Compl. at 3-14.

The following facts are undisputed unless otherwise indicated:  At all times relevant to this action, plaintiff was an inmate housed at High Desert State Prison ("HDSP"), and defendants worked at HDSP.  Dckt. No. 141-2, Defs.' Statement of Undisputed Facts ISO Defs.' Mot. For Summ. J. ("DUF") 1, 2; Dckt. No. 9, Am. Compl., at 2-3.  On the morning of July 11, 2004, defendant McCoy placed plaintiff and his cell-mate Rollins in the shower, and defendant Ginder searched their cell.  DUF 7, 8; Dckt. No. 128, Pl.'s Statement of Undisputed Facts ("PUF") 7, 8.

Plaintiff alleges that "sexual misconduct" by Rollins toward a female officer earlier in the morning caused defendants Ginder and McCoy to retaliate by performing the cell search, but defendants dispute this fact.  PUF 2, 13, 14; DUF 7, 8.  Defendants claim that the search was not related to the alleged incident between Rollins and the female officer, but was instead a legitimate search per prison protocol prompted by plaintiff's request for additional soap and toilet paper.  DUF 3-8.  Plaintiff denies having made such a request.  PUF 13.  Plaintiff alleges

_____

obligations in responding to a motion for summary judgment must be provided to a pro se prisoner plaintiff at the time such a motion is filed) in order to allow defendants to provide plaintiff with the required notice.  Defendants re-filed their motion for summary judgment with the notice, and plaintiff did not file a new opposition.  *See* Dckt. Nos. 141-5 (*Rand* notice), 143 (order granting plaintiff additional time to file a new opposition, which plaintiff elected not to do).  As plaintiff has not changed his opposition, the undersigned now reissues the previous order and findings and recommendations.

The prior findings and recommendations included two orders, one granting plaintiff's motion to supplement evidence (Dckt. No. 137) and another ruling on defendants' objections to plaintiff's evidence submitted in support of his opposition to the summary judgment motion.  Those orders were not vacated and still stand.  *See* Dckt. No. 140 (vacating findings and recommendations).

1  that defendant Ginder took all toilet paper, soap, cleaning supplies, and plaintiff's personal

2  books.  PUF 9.  According to plaintiff, he then asked defendant Ginder for some soap and toilet

3  paper, which defendant Ginder did not provide.  Dckt. No. 9, Am. Compl., at 4.  Defendants

4  claim that, per prison protocol, they confiscated only excess toilet paper, soap, and library books,

5  leaving one bar of soap and one partial roll of toilet paper for each inmate.  DUF 8, 9.  Plaintiff

6  further alleges that, after the change of shift, he asked defendant Ervin for soap and toilet paper

7  but was refused.  PUF 15.  Nor did defendant Ervin provide plaintiff with a shower that day.

8  PUF 16.

9       Later that day, defendant Ervin attempted to deliver dinner to plaintiff's cell.  DUF 11;

10  PUF 17.  Plaintiff alleges that the trays brought to his and Rollins's cell were paper, while other

11  inmates were not given paper trays.  PUF 19.  Plaintiff viewed the paper trays as a form of

12  discrimination and retaliation and consequently dumped or knocked the first tray on the floor.

13  Dckt. No. 9, Am. Compl., at 5; DUF 12.  The parties dispute whether plaintiff reached through

14  the food port to knock the second tray out of defendant Ervin's hand or whether defendant Ervin

15  threw the tray at the food port.  PUF 20; Defs.' P.'s & A.'s ISO Defs.' Mot. For Summ. J. at 3, n.

16  2.

17       Defendant Ervin and former defendant Officer Evert called their watch commander,

18  defendant Chatham, to report the incident.  DUF 13.  Defendant Chatham in turn reported the

19  incident to the watch lieutenant, defendant Van Leer.  DUF 14.  Defendant Van Leer asked that

20  defendant Chatham bring Rollins and plaintiff to the program office to be interviewed.  DUF 15.

21  Defendant Chatham went to escort the two inmates, but plaintiff refused.  DUF 16, 17; PUF 21,

22  22.  About twenty minutes later, plaintiff agreed to submit to handcuffs, and defendants

23  Chatham, Chenoweth, and Hooven escorted plaintiff and Rollins to the program office.  PUF 23;

24  DUF 18, 19.  Plaintiff states that he told defendants of certain prior injuries during the escort and

25  that defendant Chenoweth stated that he did not care.  Dckt. No. 9, Am. Compl., at 6; Dckt. No.

26  ////

127, Pl.'s Decl. ISO Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Decl.") at 4.[3]  Plaintiff's

Amended Complaint contains no allegation of excessive force during the escort to the office.

*See* Dckt. No. 9, Am. Compl., at 5.  In his deposition testimony, plaintiff testified that he did not

remember that the escorting officers harmed him in any way.  Dckt. No. 84, Pl.'s Dep. at 69:18-

70:15.  In declarations opposing summary judgment, however, plaintiff now claims that

defendant Hooven or defendant Chenoweth applied handcuffs too tight.  *See* PUF 36; Dckt. No.

127-2, Pl.'s Decl. at 72, 77.

       In his interview, defendant Van Leer asked plaintiff, "What was going on."  PUF 25;

DUF 22.  Plaintiff replied along the lines of "Don't you know already" or "You should know,

you are the lieutenant."  PUF 25; DUF 23.  Defendant Van Leer told defendant Leckie and

Officer Evert to take plaintiff to the holding cell.  PUF 26; DUF 24.

       The parties dispute what happened between the program office and the holding cell.

According to plaintiff, defendant Leckie and Officer Evert "snatch[ed]" him out of his chair.

PUF 26.  Once outside the office, Officer Evert said, "he's resisting," and both he and defendant

Leckie bent plaintiff over at the waist and bent his wrists, fingers, and thumb.  PUF 26; Dckt.

No. 127, Pl.'s Decl. at 14.  A few feet from the holding cell, plaintiff tried to go down on one

knee.  PUF 27.  Defendant Leckie and Officer Evert pulled plaintiff back up, although he was

still bent over.  *Id.*  Officer Evert ordered plaintiff to go down to his knee.  *Id.*  Before plaintiff

could comply, defendant Leckie and Officer Evert "slam[med him] to the floor hard."  *Id.*

Defendant Leckie had plaintiff's right arm and shoulder and came down with his knee on

plaintiff's face.  PUF No. 29.  Officer Evert had plaintiff's left arm and shoulder.  *Id.*

       Plaintiff does not identify in his undisputed facts "other defendants" who he asserts came

down on his back with their knees, "pressing me hard to the floor hurting me."  PUF No. 29.

---

[3] Plaintiff has submitted numerous of his own declarations in opposition to the summary judgment motion.  For clarity, the undersigned will cite to these declarations by docket entry and page number.

Instead, he states, "I didn't know who these Defendants was [sic] until I got they incident reports [sic]." *Id.* Plaintiff's opposing memorandum asserts that defendants Ervin and Chatham did so. Pl.'s P.'s & A.'s ISO of Pl.'s Opp'n at 41.  According to plaintiff, "defendants" – presumably Ervin and Chatham – then got off of him and raised his legs, crossed them, and pressed them into his buttocks.  PUF 29.[4]  Plaintiff states that he never thrashed or kicked his feet during the episode.  PUF 32.  Plaintiff asked defendant Leckie and Officer Evert to "easy up" three or four times, but defendant Chatham did not order either officer to do so.  PUF 33.

Defendants claim that, during the escort to the holding cell, Officer Evert directed plaintiff three times to kneel down so that he could apply leg restraints, but that plaintiff refused to comply.  DUF 26.  Defendant Leckie and Officer Evert then applied pressure to plaintiff's shoulders and arms to force him to the floor.  DUF 27.  Defendant Ervin held plaintiff's legs to the ground.  DUF 28.  A few seconds later, defendant Chatham took over holding plaintiff's legs. DUF 29.

Once Officer Bitle arrived with leg restraints and applied them, defendant Chatham released plaintiff's legs.  PUF 36; DUF 30.  Plaintiff claims that the restraints were applied too tight.  PUF 36.  Defendant Leckie and Officer Evert picked plaintiff up and placed him in the holding cell, securing him in a "triangle retention device," which plaintiff asserts chained his hand to the holding cell door.  PUF 37; DUF 32.  According to plaintiff, no defendant checked to ensure that the restraints on his wrists and ankles were not too tight.  PUF 37.  Plaintiff says that, because the shackles were too tight and restricted his blood flow, he passed out in the holding cell.  PUF 38.  Plaintiff called out to defendant Van Leer to loosen the shackles.  *Id.*; DUF 33. Plaintiff claims that defendant Van Leer told him he would get someone to loosen the shackles. PUF 38.  Defendants claim that defendant Van Leer himself began to remove the retention

---

[4] The incident reports plaintiff refers to state only that defendant Ervin restrained plaintiff's legs by using his body weight and that defendant Chatham took over restraining plaintiff's legs from defendant Ervin until Officer Bitle arrived with leg restraints, without mention of plaintiff's back. Dckt. No. 9, Am. Compl., at 21-22, 25, 27.

device so that the handcuffs could be removed.  DUF 34.  Plaintiff passed out.  PUF 43; DUF 34. Plaintiff states that he does not know how long he was passed out either time, but that defendants Chatham and Van Leer could see him from their offices.  PUF 39, 40, 43.  Plaintiff states that no incident reports or log books state how long he was in the holding cell and that he was not given bathroom breaks or water or otherwise looked after.  PUF 41.  Plaintiff states that he came to when defendant Van Leer pulled on the chain to his shackles and saw defendant Chatham bending down, looking at him.  PUF 44.  Defendants assert that defendant Van Leer immediately summoned defendant Barton, a medical technical assistant, to examine plaintiff upon seeing plaintiff faint.  DUF 34.

Defendant Barton evaluated plaintiff and completed a medical report.  DUF 35; *see* PUF 48, 49, 55, 56.  Defendant Barton noted that plaintiff stated, "My whole body hurts," and that he had sustained scratches or abrasions on both knees and swelling on his right wrist.  DUF 35.[5] Plaintiff states that he also complained of specific pain in his back, shoulders, hips, and testicles. PUF 56.  Defendant Barton concluded that no further treatment was necessary.  *Id.*

On July 12, 2004, plaintiff requested to be seen by health care staff, and a registered nurse evaluated plaintiff on July 13, 2004.  DUF 36-39.  The nurse observed that plaintiff walked with a normal gait, straddled a chair by throwing his leg over it, and turned his head without difficulty.  DUF 38.  Plaintiff was receiving Naproxen for prior injuries and had no injuries requiring urgent treatment.[6]  DUF 38, 39.  Plaintiff was scheduled to see a physician on July 20, 2004.  DUF 38.

////

---

[5] Plaintiff claims that defendant Barton failed to note the swelling to his wrist.  PUF No. 57.  This is flatly contradicted by the medical report, submitted by plaintiff, which notes the injury.  Am. Compl., Dckt. No. 9-1 at 2.

[6] Plaintiff's medical records show that plaintiff complained of pain in his shoulders, back, knee, hands, thumbs, elbows, hips, neck, and groin prior to July 11, 2004 and was being treated with naprosyn and acetaminophen.  Dckt. 127-1 at 3-24, 46, 65, 90, 97.

### III.    Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving

party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual

1  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

2  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by

3  affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a

4  genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More

5  significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing

6  party must be such that a fair-minded jury "could return a verdict for [him] on the evidence

7  presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no

8  reason for trial.

9       The court does not determine witness credibility.  It believes the opposing party's

10  evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

11  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

12  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

13  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

14  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

15  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

16  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

17  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

18  475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

19       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

20  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

21  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

23  be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

24  issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

25  dispute over an issue that is determinative of the outcome of the case.

26  ////

1    Concurrent with the filing of the motion, defendants advised plaintiff of the requirements

2    for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No.

3    141-5; *see Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S.

4    1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

5    **IV.    Analysis**

6         Plaintiff challenges defendants' conduct under the First, Fourth, and Eighth Amendments

7    to the U.S. Constitution.

8         To state a viable First Amendment retaliation claim, a prisoner must allege five elements:

9    (1) that a state actor took some adverse action against an inmate (2) because of (3) that inmate's

10   protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

11   rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v.*

12   *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

13        The Fourth Amendment protects an individual's legitimate expectation of privacy in a

14   given space from unreasonable intrusion by a government actor.  *See Hudson v. Palmer*, 468

15   U.S. 517, 524-25 (1984).  Because prisoners lack a legitimate expectation of privacy in their

16   prison cells, the Fourth Amendment is no impediment to prison cell searches.  *Id.* at 525-30.

17        The Eighth Amendment protects prisoners from inhumane methods of punishment and

18   from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

19   2006).  Extreme deprivations are required to make out a conditions of confinement claim, and

20   only those deprivations denying the minimal civilized measure of life's necessities are

21   sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*,

22   503 U.S. 1, 9 (1992).

23        "[W]henever prison officials stand accused of using excessive physical force in violation

24   of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . .: whether force was

25   applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

26   cause harm." *Hudson v. McMillian*, 503 U.S. at 6-7.  While malicious and sadistic uses of force

always violate contemporary standards of decency, not every "malevolent touch" by a prison guard is actionable as an Eighth Amendment violation. *Id.* at 9. "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks and citations omitted). The following factors are relevant to a determination of whether a use of force violated the Eighth Amendment: (1) the need for the use of force; (2) the  relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Neither a defendant's negligence nor a plaintiff's general disagreement with the treatment he received suffices to establish deliberate indifference. *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996). Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference. *Jackson*, 90 F.3d at 332.

<u>Claims Against Defendants Ginder and McCoy.</u> Plaintiff claims that the cell search perpetrated by defendants Ginder and McCoy was retaliatory in violation of the First

1   Amendment and further violated the Fourth and Eighth Amendments.  Defendants' motion for

2   summary judgment does not address the Fourth and Eighth Amendment claims.  For the reasons

3   that follow, the undersigned recommends that the retaliation claim be summarily adjudicated in

4   defendants' favors.  In addition, because the Fourth and Eighth Amendment claims fail and

5   cannot be cured by amendment, these claims and defendants Ginder and McCoy should be

6   dismissed.  *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (stating that a district

7   court need not provide an opportunity to amend the complaint where the amendment would be

8   futile).

9        Plaintiff claims that his cellmate's "inappropriate" sexual conduct toward a female

10  correctional officer constituted the protected conduct for which he was subjected to retaliation.

11  Taking all facts regarding the conduct plaintiff describes as true, the conduct is not

12  constitutionally protected.  "[D]irect, face-to-face" confrontations that present "a danger of

13  disturbance and disruption to institutional order and discipline" are not protected by the First

14  Amendment.  *Nunez v. Ramirez*, No. 09cv413 WQH (BLM), 2010 U.S. Dist. LEXIS 28689, at

15  *13014 (S.D. Cal. Mar, 24, 2010).

16       As stated above, the Fourth Amendment does not apply to prison cell searches, and

17  plaintiff's Fourth Amendment claim therefore fails.  *Hudson v. Palmer*, 468 U.S. at 525-30.

18       Finally, plaintiff's claim that he was deprived of toilet paper, soap, and a shower for a

19  single day does not describe the kind of deprivation of the minimal necessities of civilized life

20  that is cognizable under the Eighth Amendment.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th

21  Cir. ) (stating that an inmate seeking to prove an Eighth Amendment violation must show the

22  deprivation of something "sufficiently serious"); *Tia v. Paderes*, No. 11-00459 LEK/KSC, 2012

23  U.S. Dist. LEXIS 18207, at *5 (D. Haw., Feb. 14, 2012) ("The temporary deprivation of toilet

24  paper and shaving materials on a single day do not exhibit cruel and unusual punishment under

25  the Eighth Amendment.").

26  ////

1      <u>Excessive Force Claims Against Defendants Hooven, Chenoweth, Chatham, and Ervin.</u>

2      Plaintiff's allegation, made for the first time in his opposition to summary judgment, that

3  defendants Hooven or Chenoweth applied handcuffs too tightly when escorting him from his cell

4  to the program office, is contradicted by his sworn deposition testimony.  In addition, plaintiff's

5  complaint gives no indication that he suffered any harm in the course of his transport to the

6  program office.  As plaintiff does not argue that he was confused during the deposition, the

7  undersigned views plaintiff's new allegation as a sham invented to defeat summary judgment

8  and will not accord the allegation any weight.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d

9  262, 266-67 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create

10  an issue of fact by an affidavit contradicting his prior deposition testimony.").

11      Plaintiff's allegation that defendant Chenoweth stated that he did not care when plaintiff

12  informed him of prior injuries does not make out a viable Eighth Amendment claim, as plaintiff

13  does not provide any evidence or even allege that those prior injuries presented a serious medical

14  need and that defendants' conduct deprived him of treatment.  Indeed, plaintiff's own evidence

15  shows that plaintiff was receiving regular medical care for the injuries he alleges that he suffers

16  from.  *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (holding that a prison guard's action to

17  intentionally deny or delay access to medical care may constitute deliberate indifference in

18  violation of the Eighth Amendment).

19      In his opposing memorandum, plaintiff argues that "if" defendants Hooven and

20  Chenoweth were in the program office and witnessed him passed out in the holding cell, they

21  violated the Eighth Amendment by failing to intervene to assist him.  Plaintiff has provided no

22  evidence that defendants Hooven and Chenoweth were in the program office or observed him in

23  the holding cell.  Plaintiff's claim, based on hypothetical facts not supported by evidence, cannot

24  defeat defendants' request for summary judgment.  Because plaintiff has not raised a triable issue

25  of material fact that defendants Hooven and Chenoweth violated his Eighth Amendment rights,

26  plaintiff's claims against defendants Hooven and Chenoweth should be summarily adjudicated in

1   defendants' favors.

2       Defendants Chatham and Ervin argue that plaintiff's excessive force claim against them

3   is based solely on their conduct in pinning his legs down while waiting for Officer Bitle to return

4   with the leg restraints and that plaintiff testified in his deposition that such conduct was not

5   excessive.  For his part, plaintiff has consistently contended that some defendants came down on

6   his back with their knees causing him injury.  Dckt. No. 9, Am. Compl., at 6-7.  In his

7   declarations in opposition to summary judgment, plaintiff testifies that he did not know who

8   these defendants were until he read the incident reports.  *E.g.*, Pl.'s Decl., Dckt. No. 127 at 5-6.

9   In his opposing memorandum, he identifies these defendants as Chatham and Ervin.  Dckt. No.

10  126 at 36-37.

11      As evidence in support of his claim that defendants Chatham and Ervin came down on

12  his back, plaintiff submits his declarations, which state only that he did not know who came

13  down on his back until he read the incident reports, and the incident reports themselves.  Pl.'s

14  Decl., Dckt. No. 127 at 5-6; Dckt. No. 9, Am. Compl., at 21-22, 25, 27.  As plaintiff makes clear,

15  he has no first-hand knowledge of who came down on his back, the sole evidence the court must

16  look to are the incident reports.  These reports, however, nowhere state that defendants Chatham

17  and Ervin came down on plaintiff's back with their knees.  Dckt. No. 9, Am. Compl., at 21-22,

18  25, 27.  Instead each report that documents the altercation describes these defendants' sole

19  involvement as securing plaintiff's legs with their body weight.  Dckt. No. 9, Am. Compl., at 21-

20  22, 25, 27.  As defendants note, plaintiff has testified that the force used to secure his legs was

21  not excessive.  The deposition testimony relied on by defendants is as follows:

22      Q:    Did they cross your legs?  Did they lift your legs up?

23      A:    They had them flat and they lifted my legs up and started pressing them to
            my buttock and they put the shackles and stuff on and then they put me in
24          the holding cell and chained me to the door.

25      Q:    At that point when they were putting the shackles on, you're saying that
            this is excessive force.  How was that force excessive?

26

A:    I never said that was excessive force putting the chains on.  I said it was excessive force when the officers slammed me to the ground and dived down on my back and twisted my wrists and hurt my shoulders for no reason.

Q:    So it wasn't excessive force when they applied the leg shackles?

A:    It was after, after they put them on tightly and I passed out in the holding cell.

Dckt. No. 84, Pl.'s Dep. at 101:24-102:12.  There is no dispute that Officer Bitle, not defendants Chatham or Ervin, applied the leg shackles.

However, plaintiff additionally claims that defendant Chatham violated the Eighth Amendment by failing to intervene when he was passed out in the holding cell.  He alleges that, when he came to, he saw defendant Chatham looking down at him.  Dckt. No. 9, Am. Compl., at 10.  Defendant Chatham has not addressed this claim in his motion for summary judgment.  In addition, it is not disputed that both defendants Ervin and Chatham were present when defendant Leckie, Officer Evert, and Officer Bitle used allegedly excessive force to subdue and restrain plaintiff.  "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to prevent a violation imposed by someone else.  *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).  A defendant-officer may be held liable for failing to intervene when he had enough time to observe what was happening and to intervene and prevent or curtail the violation, but failed to do so.  *See Lanier v. City of Fresno*, 2010 U.S. Dist. LEXIS 130459, 2010 WL 5113799, at *6 (E.D. Cal. Dec. 8, 2010) (citations omitted).  Defendants concede that there are disputes of material fact that preclude summary judgment in favor of defendant Leckie. Dckt. No. 141-1 at 6 n.1.  Because it is undisputed that defendants Chatham and Ervin were present during the altercation involving defendant Leckie and because defendants' motion for summary judgment fails to address their potential liability for failing to intervene, summary judgment in favor of defendants Chatham and Ervin is not appropriate.  Because the court should not grant summary judgment of plaintiff's Eighth Amendment claims against defendants Chatham and Ervin at this time for those reasons, the court need not address defendants'

1    additional arguments that the force they used was reasonable and that they are entitled to

2    qualified immunity.

3              Denial of Medical Care Claim Against Defendant Barton.

4              Plaintiff has failed to raise a triable issue of material fact that the care he received from

5    defendant Barton after fainting in the holding cell was anything more than negligent, if that.

6    While plaintiff declares that defendant Barton did not note on her medical report that he passed

7    out and that she took plaintiff's blood pressure, these facts, even if taken to be true, do not

8    describe actions that caused plaintiff to suffer unnecessary pain.  Dckt. No. 127, Pl.'s Decl. at 19.

9    Plaintiff does not explain how these alleged failures of notation harmed him.  Plaintiff alleges

10   that defendant Barton failed to treat him for having passed out, but again fails to identify any

11   harm he suffered.  Plaintiff received medical treatment from a nurse and then a physician shortly

12   after the July 11, 2004 incident.  When a prisoner alleges a delay in medical treatment, he must

13   show the delay caused an injury.  *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992),

14   *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

15   banc); *see also Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (several day delay

16   in treatment did not violate Eighth Amendment where there was no emergency and given

17   plaintiff's condition, i.e., a severe shoulder injury, the only remedy immediately available was

18   painkillers).  Plaintiff does not state or provide any evidence that any delay in treatment

19   occasioned by defendant Barton's allegedly deficient examination caused additional pain, a new

20   injury, or exacerbation of injuries.  *See* Dckt. 127-2, Pl.'s Decl. at 105-09.  Accordingly, the

21   undersigned recommends that plaintiff's claim against defendant Barton be summarily

22   adjudicated in her favor.

23   ////

24   ////

25   ////

26   ////

**VI.     Findings and Recommendations**

Accordingly, it is hereby RECOMMENDED that the August 2, 2012 motion for summary judgment (Dckt. No. 141) filed by defendants Ginder, McCoy, Hooven, Chenoweth, Ervin, Chatham, and Barton be granted as to defendants Ginder, McCoy, Hooven, Chenoweth, and Barton and denied as to defendants Ervin and Chatham.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 17, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE